**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FANNIE MAE<br>Midtown Center<br>1100 15th Street NW<br>Washington, DC 20005<br><br>Plaintiff,<br><br>-vs-<br><br>SHAKER SEVEN PEARL LLC<br>7945 Mentor Ave, Unit 114<br>Mentor, Ohio 44060<br><br>-and-<br><br>SHAKER SEVEN TOPAZ LLC<br>7945 Mentor Ave, Unit 114<br>Mentor, Ohio 44060<br><br>-and-<br><br>SHAKER SEVEN EMERALD LLC<br>7945 Mentor Ave, Unit 114<br>Mentor, Ohio 44060<br><br>-and-<br><br>SHAKER SEVEN RUBY LLC<br>7945 Mentor Ave, Unit 114<br>Mentor, Ohio 44060<br><br>-and-<br><br>SHAKER SEVEN DIAMOND LLC<br>7945 Mentor Ave, Unit 114<br>Mentor, Ohio 44060<br><br>-and-<br><br>SHAKER SEVEN GOLD LLC<br>7945 Mentor Ave, Unit 114 | : | CASE NO: ____________________<br><br>JUDGE: ________________________ |

Mentor, Ohio 44060 :

-and- :

SHAKER SEVEN SILVER LLC :
7945 Mentor Ave, Unit 114 :
Mentor, Ohio 44060 :

-and- :

DARSHAN MUNDY :
30 N. Gould Street, Suite R :
Sheridan, Wyoming 82801 :

-and- :

JORAWER MUNDY :
30 N. Gould Street, Suite R :
Sheridan, Wyoming 82801 :

-and- :

FRANCESCO ORSELLI :
6 Loch Lane :
Rye Brook, New York 10573 :

-and- :

JASON PERO :
3355 Zimmerly Road :
Erie, Pennsylvania 16506 :

-and- :

JENS NIELSEN :
229 Valle Del Sol Drive :
Santa Fe, New Mexico 87501 :

-and- :

FAIRHILL POINTE LLC :
c/o Jack Petrick, Statutory Agent :
15400 Pearl Rd. Suite 234 :
Strongsville, Ohio 44136 :

-and- :

McPHILLIPS PLUMBING HEATING & AIR CONDITIONING CO.
c/o Melissa Fraser, Statutory Agent
16115 Waterloo Road
Cleveland, Ohio 44110

Defendants.

**COMPLAINT FOR JUDGMENT ON NOTE, BREACH OF GUARANTY, FORECLOSURE OF MORTGAGE, ENFORCEMENT OF SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS, AND APPOINTMENT OF RECEIVER**

Plaintiff Fannie Mae, by and through its undersigned counsel, and for its Complaint against Defendants, hereby alleges as follows:

**THE PARTIES**

1. Fannie Mae brings this Complaint against Defendants Shaker Seven Pearl LLC, Shaker Seven Topaz LLC, Shaker Seven Emerald LLC, Shaker Seven Ruby LLC, , Shaker Seven Diamond LLC, Shaker Seven Gold LLC, and Shaker Seven Silver LLC (collectively, "Borrower"), and other named defendants, based on various defaults under the terms of the relevant Loan Documents (as defined infra).

2. Fannie Mae is a corporation charted under the laws of the United States of America with its principal place of business located at Midtown Center, 1100 15th Street NW, Washington, DC 20005.

3. Fannie Mae is a citizen of the District of Columbia pursuant to 12 U.S.C. § 1717(a)(2)(B).

4. Defendant Darshan Mundy ("Darshan") is an individual whose domicile is located in Wyoming, making him a citizen of Wyoming pursuant to 28 U.S.C. § 1322, and who is subject to the jurisdiction of this Court because, among other reasons, he contractually consented to the

jurisdiction of this Court.

5. Defendant Jorawer Mundy ("Jorawer") is an individual whose domicile is located in Wyoming, making him a citizen of Wyoming pursuant to 28 U.S.C. § 1322, and who is subject to the jurisdiction of this Court because, among other reasons, he contractually consented to the jurisdiction of this Court.

6. Defendant Francesco Orselli ("Orselli") is an individual whose domicile is located in New York, making him a citizen of New York pursuant to 28 U.S.C. § 1322, and who is subject to the jurisdiction of this Court because, among other reasons, he contractually consented to the jurisdiction of this Court.

7. Defendant Jason Pero ("Pero") is an individual whose domicile is located in Pennsylvania, making him a citizen of Pennsylvania pursuant to 28 U.S.C. § 1322, and who is subject to the jurisdiction of this Court because, among other reasons, he contractually consented to the jurisdiction of this Court.

8. Defendant Jens Nielsen (individually, "Nielsen" and together with Darshan, Jorawer, Orselli, and Pero, "Guarantors") is an individual whose domicile is located in New Mexico, making him a citizen of New Mexico pursuant to 28 U.S.C. § 1322, and who is subject to the jurisdiction of this Court because, among other reasons, he contractually consented to the jurisdiction of this Court.

9. Each Borrower has a principal place of business at 7945 Mentor Ave, Unit 114, Mentor, Ohio 44060.

10. Each Borrower is an Ohio liability limited company and is subject to the jurisdiction of this Court.

11. Based on information provided at origination of the loan at issue in this case, Shaker

Seven LLC is the sole member of each Borrower.

12. Shaker Seven LLC has six members: Tera Capital Group, LLC, D&P Cleveland LLC, Zen Abode Holdings, LLC, E2F Properties, LLC, Pero Real Estate LLC, and Open Doors RE Mgmt LLC.

13. Tera Capital Group, LLC has three members: Tera Investments, Inc., Jorawer, and Darshan.

14. Tera Investments, Inc. is a California citizen because it is a California corporation with a principal place of business in California.

15. As noted above, Darshan and Jorawer are both Wyoming citizens, so Tera Capital Group, LLC is a citizen of California and Wyoming.

16. D&P Cleveland LLC has two members: Manjinder Singh and Sukhwinder Purewal.

17. Upon information and belief, Manjinder Singh and Sukhwinder Purewal are individuals whose domicile is located in Arizona, making them both citizens of Arizona pursuant to 28 U.S.C. § 1322.

18. As such, D&P Cleveland LLC is a citizen of Arizona.

19. Zen Abode Holdings, LLC has one member: Hemant Pawar.

20. Upon information and belief, Hemant Pawar is a citizen of an unknown foreign state, but whose domicile is located in California, making him a citizen of a foreign state pursuant to 28 U.S.C. § 1322.

21. As such, Zen Abode Holdings, LLC is a citizen of an unknown foreign state.

22. E2F Properties, LLC has two members: Orselli and Elena Orselli.

23. Elena Orselli is an individual whose domicile is located in New York, making her a citizen of New York pursuant to 28 U.S.C. § 1322.

24. As noted above, Orselli is also a New York citizen, so E2F Properties, LLC is a citizen of New York.

25. Pero Real Estate LLC has two members: Pero and Nadia Shabanza-Pero.

26. Nadia Shabanza-Pero is an individual whose domicile is located in Pennsylvania, making her a citizen of Pennsylvania pursuant to 28 U.S.C. § 1322

27. As noted above, Pero is also a Pennsylvania citizen, so Pero Real Estate LLC is a citizen of Pennsylvania.

28. Open Doors RE Mgmt LLC has two members: Nielsen and Karen Nielsen.

29. Karen Nielsen is an individual whose domicile is located in New Mexico, making her a citizen of New Mexico pursuant to 28 U.S.C. § 1322

30. As noted above, Nielsen is also a New Mexico citizen, so Open Doors RE Mgmt LLC is a citizen of Pennsylvania.

31. As such, each Borrower is a citizen of California, Wyoming, Arizona, an unknown foreign state, New York, Pennsylvania, and New Mexico.

32. Upon information and belief, Defendant Fairhill Pointe LLC ("Fairhill") may claim an ownership interest in Parcel 9, Tract 2 of the Bon Air Properties (as defined below, and as noted on the title commitment filed in connection with this Complaint).

33. Fairhill is an Ohio limited liability company, which dissolved in 2024 but continues to exist under Ohio law for purposes of litigation.

34. Upon information and belief, Jack Petrick is the managing member of Fairhill.

35. Jack Petrick is an individual whose domicile is located in Ohio, making him a citizen of Ohio pursuant to 28 U.S.C. § 1322.

36. No other members are identified in the Ohio Secretary of State records related to

Fairhill or the Certificate of Dissolution.

37. As such, Fairhill is a citizen of Ohio.

38. Upon information and belief, Defendant McPhillips Plumbing Heating & Air Conditioning Co. ("McPhillips") may claim an interest in Parcel 5 of the Kemper Court Properties (as defined below, and as noted on the title commitment filed in connection with this Complaint).

39. Based on publicly available information, McPhillips is an Ohio corporation for profit, has a principal place of business in Cleveland, Ohio, and is a citizen of Ohio pursuant to 28 U.S.C. § 1332(c)(1).

40. Fannie Mae has not joined any residential tenants with a leasehold interest in the subject property because Fannie Mae does not currently intend to foreclose upon or otherwise impact the rights of said residential tenants.

## JURISDICTION & VENUE

41. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

42. Diversity jurisdiction is proper because Fannie Mae is a citizen of the District of Columbia, because none of the defendants are citizens of the District of Columbia, and because the amount in controversy exceeds $75,000.00.

43. Borrower and Guarantors each consented to service, jurisdiction, and venue in this court for any litigation involving the loan at issue in this matter.

44. Venue in this Court are proper because the subject of this action is a commercial loan, payment of which is secured by real property located within the territorial jurisdiction of this Court, in Cuyahoga County, Ohio.

45. A Title Commitment that establishes evidence of record title to the Properties as

required under Amended General Order No. 2006-16-6 is filed contemporaneously herewith.

46. An affidavit that attaches a written payment history, which authenticates copies of the promissory note, a full recorded copy of the mortgage, and that further satisfies the requirements of Amended General Order No. 2006-16-6 is attached hereto as Exhibit A.

## FACTS COMMON TO ALL COUNTS

47. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

48. Fannie Mae is a government-sponsored enterprise and a federally-chartered entity that Congress created to enhance the nation's housing-finance market.

49. Congress chartered Fannie Mae to facilitate the nationwide secondary-residential mortgage market. *See* 12 U.S.C. § 1716.

50. The Housing and Economic Recovery Act of 2008 (HERA), Pub. L. No. 110-289, 122 Stat. 2645 (codified as 12 U.S.C. § 4511 *et seq*.), established the Federal Housing Finance Agency ("FHFA" or "Conservator") as Fannie Mae's primary regulator.

51. On September 6, 2008, pursuant to HERA, the Director of FHFA placed Fannie Mae into conservatorship, where it remains to this day. *See* 12 U.S.C. § 4617(a).

52. As Conservator, FHFA succeeded to all of Fannie Mae's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i).

53. FHFA, as the Conservator is statutorily empowered to "preserve and conserve [Fannie Mae's] assets and property," to "operate" Fannie Mae, to "perform all [of Fannie Mae's] functions in [Fannie Mae's] name," and to "collect all obligations and money due" to Fannie Mae. 12 U.S.C. § 4617(b)(2)(B)(i)-(iv).

54. Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's] powers or functions ... as a conservator." 12 U.S.C. § 4617(f).

55. Because the receiver derives its authority from the Court, 12 U.S.C. § 4617(f) also precludes the receiver from restraining or affecting the Conservator's exercise of its statutory powers and functions.

56. FHFA has represented to Fannie Mae that FHFA supports the appointment of a receiver on the terms set forth in the proposed order for this Court's consideration, which would be presented at a hearing on Fannie Mae's request for the appointment receiver. However, FHFA reserves its rights as to any other or different terms for the appointment of a receiver that have not been approved explicitly by FHFA in advance.

57. HERA provides that "[n]o property of [Conservator] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [Conservator], nor shall any involuntary lien attach to the property of [Conservator]." *See* 12 U.S.C. § 4617(j)(3).

58. Therefore, federal law prohibits any action by a third-party that affects Fannie Mae's interest in the loan agreement, note or deed of trust, owned by Fannie Mae or under which Fannie Mae is beneficiary.

59. Fannie Mae is the current owner and holder of the "Loan Documents" as defined below.

60. FHFA has represented to Fannie Mae that FHFA supports the appointment of a receiver for the "Mortgaged Property" (as defined *infra*) under the circumstances herein. However, FHFA reserves its rights as to terms for the appointment of a receiver that have not been approved by FHFA in advance.

***The Bon Air Mortgage Loan:***

61. On or about June 16, 2021, Fairhill Pointe LLC entered into a certain multifamily loan (the "Bon Air Mortgage Loan"), subject to the terms and conditions of that certain Multifamily Loan and Security Agreement (Non-Recourse) (the "Bon Air Loan Agreement") with Sabal Capital II, LLC ("Original Lender"). A true and accurate copy of the Loan Agreement is attached hereto as Exhibit B.

62. The Bon Air Mortgage Loan is evidenced by a Multifamily Note in the original principal amount of $5,100,000.00 (the "Bon Air Note") dated June 16, 2021, which was executed by Fairhill Pointe LLC and originally payable and delivered to Original Lender. A true and accurate copy of the Note is attached hereto as Exhibit C.

63. The Bon Air Note contains an endorsement page, which demonstrates that the Note was endorsed by Original Lender and made payable to Fannie Mae, who is currently in physical possession of the original Bon Air Note.

64. To secure repayment of the Bon Air Note and the amounts due under the Bon Air Loan Agreement, Fairhill Pointe LLC executed and delivered to Original Lender an Open-End Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (Ohio) (the "Bon Air Mortgage") dated June 16, 2021 and recorded in the Cuyahoga County, Ohio, Fiscal Officer's Office on June 17, 2021, at Instrument No. 202106170225. A true and accurate copy of the recorded Mortgage is attached hereto as Exhibit D.

65. The Bon Air Mortgage granted a first lien on certain real property and personal property located at real property located at 2550 Kemper Rd, 2534 Kemper Rd, and 13654 Fairhill Rd, Shaker Heights, Ohio 44120 (the "Bon Air Properties").

66. The Bon Air Mortgage contains a security agreement (the "Bon Air Security Agreement") pursuant to which Fairhill Pointe LLC pledged, assigned, and granted a continuing

security interest (the "Bon Air Security Interest") in any and all of that portion of the Bon Air Properties in which a security interest may be granted and in which Fairhill Point LLC has any present or thereafter acquired right title or interest.

67. The Bon Air Mortgage also contains an assignment of Leases and Rents (the "Bon Air Assignment of Leases") pursuant to which Fairhill Pointe LLC absolutely and unconditionally assigned and transferred all Leases and Rents (as both terms are defined in the Bon Air Mortgage). However, Fairhill Pointe LLC was granted a revocable license to exercise all rights, power and authority granted to Fairhill Pointe LLC under the Leases and to collect and receive all Rents. Upon an Event of Default, this revocable license is terminated and Fannie Mae is immediately entitled, directly or through a receiver, to receive and collect all Rents due and paid.

68. Article 3 of the Bon Air Loan Agreement identifies specific circumstances in which Fairhill Pointe LLC would be personally liable for some or all of the amount due under the Bon Air Mortgage Loan. Except under those specific circumstances (the "Exceptions to Non-Recourse Provision"), Fairhill Pointe LLC was not personally liable for repayment of the Bon Air Mortgage Loan. Rather, Fannie Mae's only recourse for the satisfaction of the amount due under the Bon Air Mortgage Loan is Fannie Mae's exercise of its rights and remedies with respect to the Bon Air Properties and other collateral.

69. The Bon Air Loan Agreement was further secured by a Guaranty of Non-Recourse Obligations (the "Bon Air Guaranty"). A true and accurate copy of the Bon Air Guaranty is attached hereto as Exhibit E.

70. Pursuant to the Bon Air Guaranty, the original guarantor absolutely and unconditionally guaranteed Fairhill Pointe LLC's full and prompt payment of any and all amounts, obligations, and liabilities owed by Fairhill Pointe LLC upon the occurrence of any of the

Exceptions to Non-Recourse Provision, and all costs and expenses, including reasonable attorneys' fees, associated with the enforcement of the Bon Air Guaranty.

71. The Bon Air Loan Agreement, Bon Air Note, Bon Air Mortgage, Bon Air Guaranty, and other related loan documents (collectively, the "Bon Air Loan Documents") were assigned by Original Lender to Fannie Mae pursuant to the certain Assignment of Collateral Agreements and other Loan Documents (Sabal Capital II, LLC to Sabal TL1, LLC) and that certain Assignment of Collateral Agreements and other Loan Documents (Sabal TL1, LLC to Fannie Mae) (collectively, the "Bon Air Assignments"). True and accurate copies of the Bon Air Assignments are attached hereto as Exhibits F and G.

72. Fannie Mae is the current mortgagee of record for the Bon Air Mortgage, as evidenced by the Assignment of Security Instrument recorded on June 17, 2021 at Instrument No. 202106170226 (the "Bon Air First Assignment of Mortgage") and the Assignment of Security Instrument recorded on June 16, 2021 at Instrument No. 202106170227 (the "Bon Air Second Assignment of Mortgage"). Copies of the Bon Air First Assignment of Mortgage and Bon Air Second Assignment of Mortgage is attached hereto as Exhibits H and I.

73. On or about November 3, 2023, Fairhill Pointe LLC and Fannie Mae entered into the First Amendment to Multifamily Loan and Security Agreement (the "Bon Air First Amendment"), pursuant to which Defendants Shaker Seven Pearl LLC, Shaker Seven Topaz LLC, and Shaker Seven Emerald LLC (collectively the "Bon Air Borrowers") assumed the obligations of Shaker Pointe LLC under the Bon Air Mortgage Loan, A true and accurate copy of the Kemper Court First Amendment is attached hereto as Exhibit J.

74. In connection with Fairhill Pointe LLC's execution of the Bon Air First Amendment, on or about November 3, 2023, Darshan, Jorawer, Orselli, Pero and Nielsen

(collectively, the "Guarantors") executed an Assumption and Release Agreement (the "Bon Air Assumption and Release Agreement"), pursuant to which Guarantors assumed all obligations under the Bon Air Guaranty. A true and accurate copy of the Bon Air Assumption and Release Agreement is attached hereto as Exhibit K.

75. Pursuant to the Bon Air Assumption and Release Agreement, Guarantors assumed the obligation to absolutely and unconditionally guarantee the Bon Air Borrowers' full and prompt payment of any and all amounts, obligations, and liabilities owed by the Bon Air Borrowers upon the occurrence of any of the Exceptions to Non-Recourse Provision in the Bon Air Loan Agreement, and all costs and expenses, including reasonable attorneys' fees, associated with the enforcement of the Bon Air Guaranty.

76. Although the Bon Air Assumption and Release Agreement was based on the expectation that the Bon Air Properties would be transferred from Fairhill Pointe LLC to the Bon Air Borrowers, a certain tract of land within the Bon Air Properties (identified in the title commitment and referred to herein as "Parcel 9, Tract 2") was retained by Fairhill Pointe LLC in error or by oversight.

77. The Bon Air Mortgage and the Bon Air Security Interest encumber all of the Bon Air Properties, including Parcel 9, Tract 2.

78. Fairhill Pointe LLC is an additional defendant herein based on its retained interest in Parcel 9, Tract 2.

79. Because Fannie Mae is the current holder of the Bon Air Note, mortgagee of record of the Bon Air Mortgage, and assignee of the Bon Air Assignment, Fannie Mae is entitled to enforce all of the Bon Air Loan Documents.

80. Fannie Mae and Original Lender (as Fannie Mae's predecessor-in-interest) have

performed all of their respective obligations under the Bon Air Loan Documents.

***The Kemper Court Mortgage Loan:***

81. On or about June 16, 2021, Shaker Pointe LLC entered into a certain multifamily loan (the "Kemper Court Mortgage Loan"), subject to the terms and conditions of that certain Multifamily Loan and Security Agreement (Non-Recourse) (the "Kemper Court Loan Agreement") with Original Lender. A true and accurate copy of the Kemper Court Loan Agreement is attached hereto as Exhibit L.

82. The Kemper Court Mortgage Loan is evidenced by a Multifamily Note in the original principal amount of $3,075,000.00 (the "Kemper Court Note") dated June 16, 2021, which was executed by Shaker Pointe LLC and originally payable and delivered to Original Lender. A true and accurate copy of the Kemper Court Note is attached hereto as Exhibit M.

83. The Kemper Court Note contains an endorsement page, which demonstrates that the Note was endorsed by Original Lender and made payable to Fannie Mae, who is currently in physical possession of the original Kemper Court Note.

84. To secure repayment of the Kemper Court Note and the amounts due under the Kemper Court Loan Agreement, Shaker Pointe LLC executed and delivered to Original Lender an Open-End Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (Ohio) (the "Kemper Court Mortgage") dated June 16, 2021 and recorded in the Cuyahoga County, Ohio, Fiscal Officer's Office on June 17, 2021, at Instrument No. 202106170217. A true and accurate copy of the recorded Kemper Court Mortgage is attached hereto as Exhibit N.

85. The Kemper Court Mortgage granted a first lien on certain real property and personal property located at real property located at 2572 Kemper Rd and 2566 Kemper Rd, Shaker Heights, Ohio 44120 (the "Kemper Court Properties").

86. The Kemper Court Mortgage contains a security agreement (the "Kemper Court Security Agreement") pursuant to which Shaker Pointe LLC pledged, assigned, and granted a continuing security interest (the "Kemper Court Security Interest") in any and all of that portion of the Kemper Court Properties in which a security interest may be granted and in which Shaker Pointe LLC has any present or thereafter acquired right title or interest.

87. The Kemper Court Mortgage also contains an assignment of Leases and Rents (the "Kemper Court Assignment of Leases") pursuant to which Shaker Pointe LLC absolutely and unconditionally assigned and transferred all Leases and Rents (as both terms are defined in the Kemper Court Mortgage). However, Shaker Pointe LLC was granted a revocable license to exercise all rights, power and authority granted to Shaker Pointe LLC under the Leases and to collect and receive all Rents. Upon an Event of Default, this revocable license is terminated and Fannie Mae is immediately entitled, directly or through a receiver, to receive and collect all Rents due and paid.

88. Article 3 of the Kemper Court Loan Agreement identifies specific circumstances in which Shaker Pointe LLC would be personally liable for some or all of the amount due under the Kemper Court Mortgage Loan. Except under those specific circumstances (the "Exceptions to Non-Recourse Provision"), Shaker Pointe LLC was not personally liable for repayment of the Kemper Court Mortgage Loan. Rather, Fannie Mae's only recourse for the satisfaction of the amount due under the Kemper Court Mortgage Loan is Fannie Mae's exercise of its rights and remedies with respect to the Properties and other collateral.

89. The Kemper Court Loan Agreement was further secured by a Guaranty of Non-Recourse Obligations (the "Kemper Court Guaranty"). A true and accurate copy of the Kemper Court Guaranty is attached hereto as Exhibit O.

90. Pursuant to the Kemper Court Guaranty, the original guarantor absolutely and unconditionally guaranteed Shaker Pointe LLC's full and prompt payment of any and all amounts, obligations, and liabilities owed by Shaker Pointe LLC upon the occurrence of any of the Exceptions to Non-Recourse Provision, and all costs and expenses, including reasonable attorneys' fees, associated with the enforcement of the Kemper Court Guaranty.

91. The Kemper Court Loan Agreement, Kemper Court Note, Kemper Court Mortgage, Kemper Court Guaranty, and other related loan documents (collectively, the "Kemper Court Loan Documents") were assigned by Original Lender to Fannie Mae pursuant to the certain Assignment of Collateral Agreements and other Loan Documents (Sabal Capital II, LLC to Sabal TL1, LLC) and that certain Assignment of Collateral Agreements and other Loan Documents (Sabal TL1, LLC to Fannie Mae) (collectively, the "Kemper Court Assignments"). True and accurate copies of the Kemper Court Assignments are attached hereto as Exhibits P and Q.

92. Fannie Mae is the current mortgagee of record for the Kemper Court Mortgage, as evidenced by the Assignment of Security Instrument recorded on June 17, 2021 at Instrument No. 202106170218 (the "Kemper Court First Assignment of Mortgage") and the Assignment of Security Instrument recorded on June 16, 2021 at Instrument No. 202106170219 (the "Kemper Court Second Assignment of Mortgage"). Copies of the Kemper Court First Assignment of Mortgage and Kemper Court Second Assignment of Mortgage is attached hereto as Exhibits R and S.

93. On or about November 3, 2023, Shaker Pointe LLC and Fannie Mae entered into the First Amendment to Multifamily Loan and Security Agreement (the "Kemper Court First Amendment"), pursuant to which Defendants Shaker Seven Ruby LLC and Shaker Seven Diamond LLC (collectively the "Kemper Court Borrowers") assumed the obligations of Shaker Pointe LLC under the Kemper Court Mortgage Loan. A true and accurate copy of the Kemper

Court First Amendment is attached hereto as Exhibit T.

94. In connection with Shaker Pointe LLC's execution of the Kemper Court First Amendment, on or about November 3, 2023, Guarantors executed an Assumption and Release Agreement (the "Kemper Court Assumption and Release Agreement"), pursuant to which Guarantors assumed all obligations under the Kemper Court Guaranty. A true and accurate copy of the Kemper Court Assumption and Release Agreement is attached hereto as Exhibit U.

95. Pursuant to the Kemper Court Assumption and Release Agreement, Guarantors assumed the obligation to absolutely and unconditionally guarantee the Kemper Court Borrowers' full and prompt payment of any and all amounts, obligations, and liabilities owed by the Kemper Court Borrowers upon the occurrence of any of the Exceptions to Non-Recourse Provision in the Kemper Court Loan Agreement, and all costs and expenses, including reasonable attorneys' fees, associated with the enforcement of the Kemper Court Guaranty.

96. Because Fannie Mae is the current holder of the Kemper Court Note, mortgagee of record of the Kemper Court Mortgage, and assignee of the Kemper Court Assignment, Fannie Mae is entitled to enforce all of the Kemper Court Loan Documents.

97. Fannie Mae and Original Lender (as Fannie Mae's predecessor-in-interest) have performed all of their respective obligations under the Kemper Court Loan Documents.

***<u>The Heights Mortgage Loan:</u>***

98. On or about June 16, 2021, Shaker Pointe LLC entered into a certain multifamily loan (the "Heights Mortgage Loan"), subject to the terms and conditions of that certain Multifamily Loan and Security Agreement (Non-Recourse) (the "Heights Loan Agreement") with Original Lender. A true and accurate copy of the Heights Loan Agreement is attached hereto as Exhibit V.

99. The Heights Mortgage Loan is evidenced by a Multifamily Note in the original

principal amount of $1,725,000.00 (the "Heights Note") dated June 16, 2021, which was executed by Cleveland Heights Pointe LLC and originally payable and delivered to Original Lender. A true and accurate copy of the Heights Note is attached hereto as Exhibit W.

100. The Heights Note contains an endorsement page, which demonstrates that the Note was endorsed by Original Lender and made payable to Fannie Mae, who is currently in physical possession of the original Heights Note.

101. To secure repayment of the Heights Note and the amounts due under the Heights Loan Agreement, Cleveland Heights Pointe LLC executed and delivered to Original Lender an Open-End Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (Ohio) (the "Heights Mortgage") dated June 16, 2021 and recorded in the Cuyahoga County, Ohio, Fiscal Officer's Office on June 17, 2021, at Instrument No. 202106170221. A true and accurate copy of the recorded Heights Mortgage is attached hereto as Exhibit X.

102. The Heights Mortgage granted a first lien on certain real property and personal property located at 3235 Meadowbrook Blvd, 3219 Meadowbrook Blvd, and 3239 Silsby Rd, Shaker Heights, Ohio 44120 (the "Heights Properties").

103. The Heights Mortgage contains a security agreement (the "Heights Security Agreement") pursuant to which Cleveland Heights Pointe LLC pledged, assigned, and granted a continuing security interest (the "Heights Security Interest") in any and all of that portion of the Heights Properties in which a security interest may be granted and in which Cleveland Heights Pointe LLC has any present or thereafter acquired right title or interest.

104. The Heights Mortgage also contains an assignment of Leases and Rents (the "Heights Assignment of Leases") pursuant to which Cleveland Heights Pointe LLC absolutely and unconditionally assigned and transferred all Leases and Rents (as both terms are defined in the

Heights Mortgage). However, Cleveland Heights Pointe LLC was granted a revocable license to exercise all rights, power and authority granted to Cleveland Heights Pointe LLC under the Leases and to collect and receive all Rents. Upon an Event of Default, this revocable license is terminated and Fannie Mae is immediately entitled, directly or through a receiver, to receive and collect all Rents due and paid.

105. Article 3 of the Heights Loan Agreement identifies specific circumstances in which Cleveland Heights Pointe LLC would be personally liable for some or all of the amount due under the Heights Mortgage Loan. Except under those specific circumstances (the "Exceptions to Non-Recourse Provision"), Cleveland Heights Pointe LLC was not personally liable for repayment of the Heights Mortgage Loan. Rather, Fannie Mae's only recourse for the satisfaction of the amount due under the Heights Mortgage Loan is Fannie Mae's exercise of its rights and remedies with respect to the Heights Properties and other collateral.

106. The Heights Loan Agreement was further secured by a Guaranty of Non-Recourse Obligations (the "Heights Guaranty"). A true and accurate copy of the Heights Guaranty is attached hereto as Exhibit Y.

107. Pursuant to the Heights Guaranty, the original guarantor absolutely and unconditionally guaranteed Cleveland Heights Pointe LLC's full and prompt payment of any and all amounts, obligations, and liabilities owed by Cleveland Heights Pointe LLC upon the occurrence of any of the Exceptions to Non-Recourse Provision, and all costs and expenses, including reasonable attorneys' fees, associated with the enforcement of the Heights Guaranty.

108. The Heights Loan Agreement, Heights Note, Heights Mortgage, Heights Guaranty, and other related loan documents (collectively, the "Heights Loan Documents") were assigned by Original Lender to Fannie Mae pursuant to the certain Assignment of Collateral Agreements and

other Loan Documents (Sabal Capital II, LLC to Sabal TL1, LLC) and that certain Assignment of Collateral Agreements and other Loan Documents (Sabal TL1, LLC to Fannie Mae) (collectively, the “Heights Assignments”). True and accurate copies of the Heights Assignments are attached hereto as Exhibits Z and AA.

109. Fannie Mae is the current mortgagee of record for the Heights Mortgage, as evidenced by the Assignment of Security Instrument recorded on June 17, 2021 at Instrument No. 202106170222 (the “Heights First Assignment of Mortgage”) and the Assignment of Security Instrument recorded on June 16, 2021 at Instrument No. 202106170223 (the “Heights Second Assignment of Mortgage”). Copies of the Heights First Assignment of Mortgage and Heights Second Assignment of Mortgage are attached hereto as Exhibits BB and CC.

110. On or about November 3, 2023, Cleveland Heights Pointe LLC and Fannie Mae entered into the First Amendment to Multifamily Loan and Security Agreement (the “Heights First Amendment”), pursuant to which Defendants Shaker Seven Gold LLC and Shaker Seven Silver LLC (collectively the “Heights Borrowers”) assumed the obligations of Cleveland Heights Pointe LLC under the Heights Mortgage Loan. A true and accurate copy of the Heights First Amendment is attached hereto as Exhibit DD.

111. In connection with Cleveland Heights Pointe LLC’s execution of the Heights First Amendment, on or about November 3, 2023, Guarantors executed an Assumption and Release Agreement (the “Heights Assumption and Release Agreement”), pursuant to which Guarantors assumed all obligations under the Heights Guaranty. A true and accurate copy of the Heights Assumption and Release Agreement is attached hereto as Exhibit EE.

112. Pursuant to the Heights Assumption and Release Agreement, Guarantors assumed the obligation to absolutely and unconditionally guarantee the Heights Borrowers’ full and prompt

payment of any and all amounts, obligations, and liabilities owed by the Heights Borrower upon the occurrence of any of the Exceptions to Non-Recourse Provision in the Heights Loan Agreement, and all costs and expenses, including reasonable attorneys' fees, associated with the enforcement of the Heights Guaranty.

113. Because Fannie Mae is the current holder of the Heights Note, mortgagee of record of the Heights Mortgage, and assignee of the Heights Assignment, Fannie Mae is entitled to enforce all of the Heights Loan Documents.

114. Fannie Mae and Original Lender (as Fannie Mae's predecessor-in-interest) have performed all of their respective obligations under the Heights Loan Documents.

***<u>Cross-Default and Cross-Collateralization of the Loan Documents:</u>***

115. The Bon Air Loan Agreement, the Kemper Court Loan Agreement, and the Heights Loan Agreement are collectively referred to as the "Loan Agreements."

116. Pursuant to each of the Loan Agreements, Section 2.01(d) was added to and incorporated into the Loan Agreements as set forth in the Modifications to Multifamily Loan and Security Agreement (Cross-Default and Cross-Collateralization: Multi-Note) which was attached as Exhibit 2 to the each of Loan Agreements.

117. Under this Section 2.01(d) of each of the Loan Agreements, the Bon Air Mortgage Loan, the Kemper Court Mortgage Loan, and the Heights Mortgage Loan (collectively, the "Mortgage Loans") are cross-defaulted and cross-collateralized with each other, as the "Other Loans" were defined in the Loan Agreements.

***<u>Description of the Properties:</u>***

118. The Bon Air Properties comprise a multi-family housing project, which includes 3 separate buildings which contain 84 total units.

119. The Kemper Court Properties comprise a multi-family housing project, which includes 2 separate buildings which contain 51 total units.

120. The Heights Properties comprise a multi-family housing project, which includes 3 separate buildings which contain 29 total units.

121. The Bon Air Properties, the Kemper Court Properties, and the Heights Properties (collectively, the "Properties") are operated as a single economic unit and offer surface and garage parking.

122. The Properties are located in the Shaker Heights neighborhood in the suburbs of Cleveland, Ohio.

**BORROWER COMMITS MULTIPLE EVENTS OF DEFAULT**

123. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

***Payment Default:***

124. Pursuant to the Loan Agreements, Borrower was obligated to make consecutive monthly debt service installment payments on each of the Mortgage Loans in the amount of the applicable "Monthly Debt Service Payment" (as defined in each of the Loan Agreements).

125. The Bon Air Borrowers failed to timely make the Monthly Debt Service Payment due on May 1, 2025 and May 1, 2026.

126. In addition, the Bon Air Borrowers failed to pay the Monthly Debt Service Payment due under the Bon Air Loan Agreement on June 1, 2026, July 1, 2026, August 1, 2025, and September 1, 2026.

127. The Kemper Court Borrowers failed to timely make the Monthly Debt Service Payment due on May 1, 2025 and May 1, 2026.

128. In addition, Borrower failed to pay the Monthly Debt Service Payment due under the Kemper Court Loan Agreement on June 1, 2026, July 1, 2026, August 1, 2025, and September 1, 2026.

129. The Heights Borrowers failed to timely make the Monthly Debt Service Payment due on June 1, 2022, May 1, 2025, January 1, 2026, and May 1, 2026.

130. In addition, the Heights Borrowers failed to pay the Monthly Debt Service Payment due under the Heights Loan Agreement on July 1, 2026, August 1, 2025, and September 1, 2026.

131. Each of Borrower's failures to timely pay the Monthly Debt Service Payments constitutes a separate and independent automatic "Event of Default" as defined in Section 14.01(a)(1) of the Loan Agreements (the "Payment Default").

132. Each separate automatic "Event of Default" under any one of the Loan Agreements constitutes an automatic "Event of Default" under each of the Loan Agreements pursuant Section 2.01(d) of the respective Loan Agreements, which was added to and incorporated into the Loan Agreements as set forth in the Modifications to Multifamily Loan and Security Agreement (Cross-Default and Cross-Collateralization: Multi-Note) which was attached as Exhibit 2 to the each of Loan Agreements.

***<u>Insurance Default:</u>***

133. On December 5, 2025, Fannie Mae's loan servicer, Regions Bank ("Servicer"), provided the Bon Air Borrowers and Guarantors written notice that a casualty event occurred at one or more of the Bon Air Properties, that the Bon Air Borrowers failed to provide written notice of the casualty or event of loss as required by the Bon Air Loan Documents, and that the Bon Air Borrowers failed to remit insurance proceeds to Servicer as required under the Bon Air Loan Document.

134. The Bon Air Borrowers' failure to satisfy its obligations related to the casualty event at the Bon Air Properties is a breach of the covenants set forth in Sections 6.02(e)(1) - (4) of the Loan Agreement.

135. Despite having received written notice of this covenant breach, the Bon Air Borrowers failed to cure the default.

136. The Bon Air Borrowers' continued failure to provide notice of the casualty event and continued failure to remit insurance proceeds, which continued for more than 30 days after written notice, is an additional Event of Default under Section 14.01(c) of the Loan Agreement.

137. This additional Event of Default under the Bon Air Loan Agreement constitutes an "Event of Default" under the Kemper Court Loan Agreement and the Heights Loan Agreement pursuant Section 2.01(d) of the respective Loan Agreements, which was added to and incorporated into the Loan Agreements as set forth in the Modifications to Multifamily Loan and Security Agreement (Cross-Default and Cross-Collateralization: Multi-Note) which was attached as Exhibit 2 to the each of Loan Agreements.

***Property Condition Default:***

138. On December 5, 2026, Servicer provided the Bon Air Borrowers and Guarantors written notice that the Bon Air Borrowers failed to maintain the Bon Air Properties as required under Section 6.02 of the Loan Agreement.

139. The Bon Air Borrowers' failure to maintain and preserve the Bon Air Properties is a breach of the covenants set forth in Sections 6.02 of the Loan Agreement.

140. Despite having received written notice of this covenant breach, the Bon Air Borrowers failed to cure the default.

141. The Bon Air Borrowers' continued failure to maintain and preserve the Bon Air

Properties, which continued for more than 30 days after written notice, is an additional Event of Default under Section 14.01(c) of the Loan Agreement.

142. This additional Event of Default under the Bon Air Loan Agreement constitutes an "Event of Default" under the Kemper Court Loan Agreement and the Heights Loan Agreement pursuant Section 2.01(d) of the respective Loan Agreements, which was added to and incorporated into the Loan Agreements as set forth in the Modifications to Multifamily Loan and Security Agreement (Cross-Default and Cross-Collateralization: Multi-Note) which was attached as Exhibit 2 to the each of Loan Agreements.

143. Upon the occurrence of any single "Event of Default" under the Loan Agreement, Fannie Mae may declare the entire unpaid principal balance of the Mortgage Loan, any Accrued Interest, interest accruing at the Default Rate, the Prepayment Premium (if applicable), and all other Indebtedness, at the option of Fannie Mae, shall immediately become due and payable.

144. The Loan Agreement further provides that Borrower will pay Fannie Mae for the full amount of the "Indebtedness," which includes "Enforcement Costs" that includes, without limitation, all expenses and costs, including reasonable attorneys' fees and expenses (as those terms are defined in the Mortgage.

145. On September 4, 2026, Fannie Mae delivered to the Bon Air Borrowers and Guarantors a Notice of Default and Acceleration Letter (the "Bon Air Notice of Default"), which provided the Bon Air Borrowers and Guarantors notice of the Payment Default and demanded payment in full of all amounts due, owing and payable under the Bon Air Loan Documents. A true and accurate copy of the Bon Air Notice of Default is attached hereto as Exhibit FF.

146. On September 4, 2026, Fannie Mae delivered to the Kemper Court Borrowers and Guarantors a Notice of Default and Acceleration Letter (the "Kemper Court Notice of Default"),

which provided the Kemper Court Borrowers and Guarantors notice of the Payment Default and demanded payment in full of all amounts due, owing and payable under the Kemper Court Loan Documents. A true and accurate copy of the Kemper Court Notice of Default is attached hereto as Exhibit GG.

147. On September 4, 2026, Fannie Mae delivered to the Heights Borrowers and Guarantors a Notice of Default and Acceleration Letter (the "Heights Notice of Default"), which provided the Heights Borrowers and Guarantors notice of the Payment Default and demanded payment in full of all amounts due, owing and payable under the Heights Loan Documents. A true and accurate copy of the Heights Notice of Default is attached hereto as Exhibit HH.

148. To date, Borrower has not cured any of the Events of Default, nor has it paid the accelerated balance due under the Notes.

## FANNIE MAE DISCOVERS ADDITIONAL VIOLATIONS FROM TITLE COMMITMENT

149. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

150. Based on the results of the title commitment performed in anticipation of filing this Complaint, Fannie Mae discovered that Borrower has permitted the creation or existence of a mechanic's lien on the Kemper Court Properties in violation of Section 11.02 of the Loan Agreement:

151. To date, Borrower has not cured any of these additional Events of Default, identified in the title commitment.

## COUNT ONE: *IN REM* DEFAULT UNDER THE BON AIR NOTE

152. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

153. The Bon Air Borrowers have breached the Bon Air Note, the Bon Air Loan Agreement, and other Bon Air Loan Documents and have failed to cure multiple Events of Default thereunder.

154. Fannie Mae and its predecessor-in-interest have satisfied all of their obligations under the Bon Air Loan Documents, and all conditions precedent to Fannie Mae's claims have been performed, have occurred, or have been excused.

155. Pursuant to Section 4 of the Bon Air Note, Fannie Mae has accelerated the entire balance due under the Bon Air Note, the full amount of which is currently due and owing.

156. Based on the acceleration of the Bon Air Note, the amount due and owing to Fannie Mae under Bon Air Note is set forth below:

| | |
|---|---:|
| Principal Balance | $4,618,534.56 |
| Interest (05/01/26 - 10/31/26) | $86,161.33 |
| Default Interest (06/01/26 - 10/06/26) | $65,685.84 |
| Prepayment Premium | $46,185.35 |
| Legal Fees & Costs | $20,717.95 |
| Fannie Mae Third Party Costs | $4,800.00 |
| Processing Fee | $950.00 |
| Late Fees | $10,718.80 |
| Other Fees | $80.00 |
| Insurance Escrow | ($66,241.25) |
| Deposit Escrow | ($1,500.00) |
| Replacement Reserve Balance | ($162,685.49) |
| **Total Payoff Amount Due** | **$4,623,407.09** |

157. Any and all payments received after acceleration have been or will be applied in accordance with the payment application process set forth in the Bon Air Loan Documents.

158. Fannie Mae is entitled to an *in rem* judgment on all amounts due under the Bon Air Note and is further entitled to additional amounts under the Bon Air Loan Documents including, but not limited to additional property protection advances, other advances, fees and charges, and all collection costs including without limitation attorneys' fees.

**COUNT TWO: *IN REM* DEFAULT UNDER THE KEMPER COURT NOTE**

159. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

160. The Kemper Court Borrowers have breached the Kemper Court Note, the Kemper Court Loan Agreement, and other Kemper Court Loan Documents and have failed to cure multiple Events of Default thereunder.

161. Fannie Mae and its predecessor-in-interest have satisfied all of their obligations under the Kemper Court Loan Documents, and all conditions precedent to Fannie Mae's claims have been performed, have occurred, or have been excused.

162. Pursuant to Section 4 of the Kemper Court Note, Fannie Mae has accelerated the entire balance due under the Kemper Court Note, the full amount of which is currently due and owing.

163. Based on the acceleration of the Kemper Court Note, the amount due and owing to Fannie Mae under Note is set forth below:

| | |
|---|---|
| Principal Balance | $2,784,704.85 |
| Interest (05/01/26 - 10/31/26) | $51,950.22 |
| Default Interest (06/01/26 - 10/06/26) | $39,604.68 |
| Prepayment Premium | $27,847.05 |
| Legal Fees & Costs | **$5,120.04** |
| Fannie Mae Third Party Costs | **$4,700.00** |
| Processing Fee | $950.00 |
| Late Fees | $7,374.30 |
| Other Fees | $830.00 |
| Tax Escrow | ($3,426.09) |
| Insurance Escrow | ($40,160.58) |
| Deposit Escrow | ($1,500.00) |
| Replacement Reserve Balance | ($99,523.39) |
| P&I Reserve Balance | ($72,424.00) |
| **Total Payoff Amount Due** | **$2,706,047.08** |

164. Any and all payments received after acceleration have been or will be applied in

accordance with the payment application process set forth in the Kemper Court Loan Documents.

165. Fannie Mae is entitled to an *in rem* judgment on all amounts due under the Kemper Court Note and is further entitled to additional amounts under the Kemper Court Loan Documents including, but not limited to additional property protection advances, other advances, fees and charges, and all collection costs including without limitation attorneys' fees.

**COUNT THREE: *IN REM* DEFAULT UNDER THE HEIGHTS NOTE**

166. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

167. The Heights Borrowers have breached the Heights Note, the Heights Loan Agreement, and other Heights Loan Documents and have failed to cure multiple Events of Default thereunder.

168. Fannie Mae and its predecessor-in-interest have satisfied all of their obligations under the Heights Loan Documents, and all conditions precedent to Fannie Mae's claims have been performed, have occurred, or have been excused.

169. Pursuant to Section 4 of the Heights Note, Fannie Mae has accelerated the entire balance due under the Heights Note, the full amount of which is currently due and owing.

170. Based on the acceleration of the Heights Note, the amount due and owing to Fannie Mae under Heights Note is set forth below:

| | |
|---|---:|
| Principal Balance | $1,559,170.02 |
| Interest (06/01/26 - 10/31/26) | $24,186.63 |
| Default Interest (07/01/26 - 10/06/26) | $16,977.64 |
| Prepayment Premium | $15,591.70 |
| Legal Fees & Costs | **$4,600.00** |
| Processing Fee | $950.00 |
| Late Fees | $4,482.94 |
| Fannie Mae Third Party Costs | **$10,430.47** |
| Other Fees | $80.00 |
| Tax Escrow | ($9,312.44) |

| | |
|---|---|
| Insurance Escrow | ($30,108.44) |
| Deposit Escrow | ($1,500.00) |
| Replacement Reserve Balance | ($32,715.95) |
| **Total Payoff Amount Due** | **$1,562,832.57** |

171. Any and all payments received after acceleration have been or will be applied in accordance with the payment application process set forth in the Heights Loan Documents.

172. Fannie Mae is entitled to an in rem judgment on all amounts due under the Heights Note and is further entitled to additional amounts under the Heights Loan Documents including, but not limited to additional property protection advances, other advances, fees and charges, and all collection costs including without limitation attorneys' fees.

**COUNT FOUR: LIMITED RECOURSE PERSONAL LIABILITY OF BORROWER AND GUARANTORS UNDER THE LOAN AGREEMENTS AND THE GUARANTIES**

173. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

174. Under Section 3.02(a) of each of the Loan Agreements, Borrower is personally liable to Fannie Mae for the following:

- The failure to apply all insurance proceeds received by Borrower as required by the Loan Documents. *See* Loan Agreement, Section 3.02(a)(3).
- The amount of any loss or damages suffered as a result of waste or abandonment of the Properties. *See* Loan Agreement, Section 3.02(a)(6).

175. Borrower has failed to apply all insurance proceeds as required by the Loan Documents.

176. Borrower has allowed the Properties to deteriorate and fall into a state of disrepair, which constitutes waste or abandonment under Ohio law.

177. Fannie Mae has suffered damages as a result of these actions or omissions by

Borrower, in an amount to be determined at trial.

178. All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

179. Pursuant to Section 3.02(a) of the Loan Agreement, Borrower is personally liable for the full amount of loss or damages suffered by Fannie Mae as a result of the actions or omissions by Borrower at issue in this claim.

180. The Bon Air Loan Guaranty, the Kemper Court Guaranty, and the Heights Guaranty are collectively referred to as the "Guaranties."

181. Pursuant to the Guaranties, Guarantors are personally liable for the full amount of loss or damages suffered by Fannie Mae as a result of the actions or omissions by Borrower under each of the Loan Agreements at issue in this claim.

**COUNT FIVE: FULL RECOURSE PERSONAL LIABILITY OF BORROWER AND GUARANTORS UNDER THE LOAN AGREEMENTS AND THE GUARANTIES**

182. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

183. Under Section 3.02(b) of each of the Loan Agreements, Borrower is personally liable to Fannie Mae for the full amount due under each of the Mortgage Loans upon the occurrence of any Transfer (as defined in the Loan Agreements) that is not permitted under the Loan Agreements or other Loan Documents.

184. Borrower has permitted the creation or existence of a Lien (as defined in the Loan Agreement) on the Kemper Court Properties in violation of Section 11.02 of the Loan Agreement, which constitutes a Transfer (as defined in the Loan Agreement) that is not permitted under the Loan Documents.

185. Upon information and belief, Borrower has caused or permitted a transfer of a direct

or indirect interest in Borrower, which resulted in a change in Control (as defined in the Loan Agreement), which constitutes a Transfer (as defined in the Loan Agreement) that is not permitted under the Loan Documents.

186. All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

187. Pursuant to Section 3.02(b) of the Loan Agreements, Borrower is personally liable for the full amount due under each of the Mortgage Loans.

188. Pursuant to the Guaranties, Guarantors are personally liable for the full amount due under each of the Mortgage Loans.

## COUNT SIX: FORECLOSURE OF BON AIR MORTGAGE AND BON AIR SECURITY AGREEMENT

189. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

190. Fannie Mae is the current mortgagee of record for the Bon Air Mortgage.

191. By virtue of the lien of the Bon Air Mortgage, Fannie Mae holds a valid first priority mortgage lien on the Bon Air Properties (including without limitation Parcel 9, Tract 2), superior to any and all other liens, claims or encumbrances other than those for any tax lien asserted by the Cuyahoga County Treasurer under state law.

192. Pursuant to the terms of the Bon Air Mortgage, upon the occurrence of any Event of Default (as defined in the Bon Air Loan Agreement), the mortgagee is entitled to declare the entire indebtedness immediately due and payable and to institute a judicial foreclosure of the lien of the Bon Air Mortgage.

193. Pursuant to the terms of the Bon Air Security Agreement, upon an Event of Default, the Bon Air Borrowers further agreed that the mortgagee shall have all the rights and remedies of

a secured party under the Uniform Commercial Code as adopted by the State of Ohio with respect to any collateral to which the Bon Air Security Interest attached.

194. Multiple Events of Default have occurred under the terms of the Bon Air Loan Agreement, the terms of the Bon Air Mortgage and Bon Air Security Agreement have been breached, and Fannie Mae is entitled to have its lien on and security interest in the Bon Air Properties (including without limitation Parcel 9, Tract 2), foreclosed.

195. All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

196. Fannie Mae is authorized under the Bon Air Loan Documents to make certain protective advances to preserve the value of its collateral. Any amounts disbursed by Fannie Mae for the preservation of its collateral become additional indebtedness secured by the Bon Air Mortgage.

197. The Bon Air Properties cannot be divided without materially impairing their value or the interests of Fannie Mae therein, and the Bon Air Properties should therefore be sold according to law, as a whole, with the proceeds of sale after payment of the costs of sale and real estate taxes being applied to satisfy Fannie Mae's claims.

198. The Bon Air Properties (including without limitation Parcel 9, Tract 2) should be sold pursuant to Ohio law and procedures, free and clear of any liens, claims, or encumbrances, other than the obligation to pay real estate taxes and assessments going forward.

199. Plaintiff further acknowledges that the Cuyahoga County Treasurer has an interest in the Properties for taxes and assessments.

## COUNT SEVEN: FORECLOSURE OF KEMPER COURT MORTGAGE AND KEMPER COURT SECURITY AGREEMENT

200. Fannie Mae incorporates by reference each of the allegations in the preceding



110373671v4

paragraphs as if fully re-written and restated herein.

201. Fannie Mae is the current mortgagee of record for the Kemper Court Mortgage.

202. By virtue of the lien of the Kemper Court Mortgage, Fannie Mae holds a valid first priority mortgage lien on the Kemper Court Properties, superior to any and all other liens, claims or encumbrances other than those for any tax lien asserted by the Cuyahoga County Treasurer under state law.

203. Pursuant to the terms of the Kemper Court Mortgage, upon the occurrence of any Event of Default (as defined in the Kemper Court Loan Agreement), the mortgagee is entitled to declare the entire indebtedness immediately due and payable and to institute a judicial foreclosure of the lien of the Kemper Court Mortgage.

204. Pursuant to the terms of the Kemper Court Security Agreement, upon an Event of Default, the Kemper Court Borrowers further agreed that the mortgagee shall have all the rights and remedies of a secured party under the Uniform Commercial Code as adopted by the State of Ohio with respect to any collateral to which the Security Interest attached.

205. Multiple Events of Default have occurred under the terms of the Kemper Court Loan Agreement, the terms of the Kemper Court Mortgage and Kemper Court Security Agreement have been breached, and Fannie Mae is entitled to have its lien on and the security interest in the Kemper Court Properties foreclosed.

206. All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

207. Fannie Mae is authorized under the Kemper Court Loan Documents to make certain protective advances to preserve the value of its collateral. Any amounts disbursed by Fannie Mae for the preservation of its collateral become additional indebtedness secured by the Kemper Court

Mortgage.

208. The Kemper Court Properties cannot be divided without materially impairing their value or the interests of Fannie Mae therein, and the Kemper Court Properties should therefore be sold according to law, as a whole, with the proceeds of sale after payment of the costs of sale and real estate taxes being applied to satisfy Fannie Mae's claims.

209. The Kemper Court Properties should be sold pursuant to Ohio law and procedures, free and clear of any liens, claims, or encumbrances, other than the obligation to pay real estate taxes and assessments going forward.

210. McPhillips may claim an interest in the Kemper Court Properties by virtue of liens and encumbrances noted on the title commitment filed in connection with this Complaint.

211. Any interest of McPhillips is junior and subordinate to the lien of Kemper Court Mortgage and Kemper Court Security Agreement.

212. Plaintiff further acknowledges that the Cuyahoga County Treasurer has an interest in the Kemper Court Properties for taxes and assessments.

**COUNT EIGHT: FORECLOSURE OF HEIGHTS MORTGAGE AND HEIGHTS SECURITY AGREEMENT**

213. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

214. Fannie Mae is the current mortgagee of record for the Heights Mortgage.

215. By virtue of the lien of the Heights Mortgage, Fannie Mae holds a valid first priority mortgage lien on the Heights Properties, superior to any and all other liens, claims or encumbrances other than those for any tax lien asserted by the Cuyahoga County Treasurer under state law.

216. Pursuant to the terms of the Heights Mortgage, upon the occurrence of any Event

of Default (as defined in the Heights Loan Agreement), the mortgagee is entitled to declare the entire indebtedness immediately due and payable and to institute a judicial foreclosure of the lien of the Heights Mortgage.

217. Pursuant to the terms of the Heights Security Agreement, upon an Event of Default, Borrower further agreed that the mortgagee shall have all the rights and remedies of a secured party under the Uniform Commercial Code as adopted by the State of Ohio with respect to any collateral to which the Heights Security Interest attached.

218. Multiple Events of Default have occurred under the terms of the Heights Loan Agreement, the terms of the Heights Mortgage and Heights Security Agreement have been breached, and Fannie Mae is entitled to have its lien on and the Security Interest in the Heights Properties foreclosed.

219. All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

220. Fannie Mae is authorized under the Heights Loan Documents to make certain protective advances to preserve the value of its collateral. Any amounts disbursed by Fannie Mae for the preservation of its collateral become additional indebtedness secured by the Heights Mortgage.

221. The Properties cannot be divided without materially impairing their value or the interests of Fannie Mae therein, and the Heights Properties should therefore be sold according to law, as a whole, with the proceeds of sale after payment of the costs of sale and real estate taxes being applied to satisfy Fannie Mae's claims.

222. The Heights Properties should be sold pursuant to Ohio law and procedures, free and clear of any liens, claims, or encumbrances, other than the obligation to pay real estate taxes

and assessments going forward.

223. Plaintiff further acknowledges that the Cuyahoga County Treasurer has an interest in the Heights Properties for taxes and assessments.

**COUNT NINE: ENFORCEMENT OF ASSIGNMENTS OF LEASES**

224. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

225. The Bon Air Assignment of Leases, the Kemper Court Assignment of Leases, and the Heights Assignment of Leases are collectively referred to as the "Assignments of Leases."

226. The Bon Air Mortgage, the Kemper Court Mortgage, and the Heights Mortgage are collectively referred to as the "Mortgages."

227. Pursuant to terms of the Assignments of Leases, upon the occurrence of an Event of Default under the various Loan Agreements, Fannie Mae, as mortgagee of record, is entitled to collect and receive all Rents as to all Properties.

228. Multiple Events of Default have occurred under the terms of the Mortgages and the Loan Agreements and Fannie Mae is entitled to exercise all of its rights under the Assignments of Leases, including the right to collect Rents, directly or through a receiver.

229. All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

**COUNT TEN: APPOINTMENT OF RECEIVER**

230. Fannie Mae incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

231. The Mortgages each provide that, upon an Event of Default, Fannie Mae can obtain a court-appointed receiver (including an ex parte appointment) to perform all acts necessary and

appropriate for the operation and maintenance of the Properties, including, without limitation, the execution, cancellation, or modification of leases; the collection of all rents and revenues of the Properties; the making of repairs to the Properties; and the execution or termination of contracts providing for the management or maintenance of the Properties, all on such terms as are deemed best to protect the security of the Properties and Fannie Mae.

232. Based upon the Events of Default set forth herein and pursuant to the Mortgages, Borrower has expressly consented to the appointment of a receiver and to the payment of reasonable fees to that receiver for managing the Properties.

233. All conditions precedent to Fannie Mae's claim have been performed, have occurred, or have been excused.

234. Fannie Mae is entitled to the appointment of a receiver pursuant to Rule 66 of the Federal Rules of Civil Procedure and applicable federal practice and procedure.

**WHEREFORE**, Fannie Mae prays for judgment against Borrower and each of the Guarantors as follows:

A. On Count One, an *in rem* judgment in favor of Fannie Mae and against the Bon Air Borrowers declaring that the Bon Air Note is in default, that the Bon Air Note has been accelerated, and that the amount of $4,623,407.09 is due and owing as of October 6, 2026, plus additional contract and default interest on the outstanding principal balance of $4,618,534.56, plus all additional amounts recoverable under the Loan Documents including additional property protection advances, additional fees, and collection costs (including reasonable attorney's fees), less any and all amounts received, if any, after acceleration.

B. On Count Two, an *in rem* judgment in favor of Fannie Mae and against the Kemper Court Borrowers declaring that the Kemper Court Note is in default, that the Kemper Court Note

has been accelerated, and that the amount of $2,706,047.08 is due and owing as of October 6, 2026, plus additional default interest on the outstanding principal balance of $2,784,704.85, plus all additional amounts recoverable under the Loan Documents including additional property protection advances, additional fees, and collection costs (including reasonable attorney's fees), less any and all amounts received, if any, after acceleration.

C. On Count Three, an *in rem* judgment in favor of Fannie Mae and against the Heights Borrowers declaring that the Heights Note is in default, that the Heights Note has been accelerated, and that the amount of $1,562,832.57 is due and owing as of October 6, 2026, plus additional default interest on the outstanding principal balance of $1,559,170.02, plus all additional amounts recoverable under the Loan Documents including additional property protection advances, additional fees, and collection costs (including reasonable attorney's fees), less any and all amounts received, if any, after acceleration.

D. On Count Four, an *in personum* judgment in favor of Fannie Mae and against each Borrower and Guarantors, jointly and severally, for the full amount of loss or damages suffered by Fannie Mae as a result of the actions or omissions by Borrower at issue in this claim, in an amount in excess of $75,000.00, which will be determined at trial.

E. On Count Five, an *in personum* judgment in favor of Fannie Mae and against each Borrower and Guarantors, jointly and severally, for the full amount due under each of the Mortgage Loans.

F. An order on Count Six declaring that the Bon Air Mortgage is a valid and subsisting first and best lien upon the Bon Air Properties, subject only to real estate taxes, and that said mortgage lien be foreclosed, and that the Bon Air Security Agreement is a valid and subsisting first and best lien upon the personal property located at the Bon Air Properties, and that the lien

contained therein be foreclosed;

G. An order on Count Seven declaring that the Kemper Court Mortgage is a valid and subsisting first and best lien upon the Kemper Court Properties, subject only to real estate taxes, and that said mortgage lien be foreclosed, and that the Kemper Court Security Agreement is a valid and subsisting first and best lien upon the personal property located at the Kemper Court Properties, and that the lien contained therein be foreclosed;

H. An order on Count Eight declaring that the Heights Mortgage is a valid and subsisting first and best lien upon the Heights Properties, subject only to real estate taxes, and that said mortgage lien be foreclosed, and that the Heights Security Agreement is a valid and subsisting first and best lien upon the personal property located at the Heights Properties, and that the lien contained therein be foreclosed;

I. An order on Count Nine declaring that Fannie Mae is entitled to exercise its rights under the Assignment of Leases;

J. An order on Count Ten appointing a receiver over the Properties, to collect Rents, to preserve the Properties, and for all other purposes allowed by law;

K. That the equity of redemption of each Borrower as borrower be forever cut off, barred and foreclosed, and that the Properties, including without limitation all collateral under the relevant security agreements, be assembled and sold upon execution in accordance with law;

L. That upon the sale of the Properties, including without limitation all collateral under the relevant security agreements, the proceeds of such sale be paid to Fannie Mae to satisfy the amount of its existing lien and the interest, charges, fees, disbursements, and advancements and other matters related to said real estate and personal property, together with all cost and fees herein expended, including attorney fees;

M. That all liens be marshaled, to the extent necessary; and

N. For such other relief to which Fannie Mae may be entitled in equity or at law.

Respectfully submitted,

/s/ *Justin W. Ristau*
Justin W. Ristau (0075222)
BRICKER GRAYDON WYATT LLP
100 South Third Street
Columbus, Ohio 43215
Tel: (614) 227-4857
Email: jristau@bricker.com
Counsel for Plaintiff Fannie Mae